229 F.Supp. 417 (1964)
LOCAL NO. 688, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Plaintiff,
v.
Wayne L. TOWNSEND, Pete Saffo, Richard Kavner, Joseph H. Gass, and Melville Hampe, Trustees of Teamsters' Medicare Trust for Retired Employees Trust, Defendants.
No. 64 C 96(1).
United States District Court E. D. Missouri, E. D.
May 13, 1964.
*418 Merle L. Silverstein, Rosenblum & Goldenhersh, St. Louis, Mo., for plaintiff.
J. Terrell Vaughan, Armstrong, Teasdale, Roos, Kramer & Vaughn, St. Louis, Mo., for defendants.
HARPER, Chief Judge.
In February, 1964, Local Union 688 and Local Union 610, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and certain employers in the St. Louis, Missouri, metropolitan area, entered into an agreement, one of the effects of which was to establish a trust known as the "Teamsters Medicare Trust for Retired Employees," (hereinafter referred to as the Trust). The sole purpose of the Trust is to provide medical care for employees of the contributing employers after said employees have retired. Contributions in the sum of two cents for each hour of basic wage paid to the covered employees have been made to the trustees of the Trust since its establishment. The trustees have refused to provide any program of medical benefits for retired employees purportedly covered by the trust agreement or to expend any funds in furtherance of the Trust purposes for fear that such expenditures would violate 29 U.S.C.A. § 186. This decision on the part of the trustees was motivated by the decision of this court in Kroger Company et al. v. Blassie et al., D.C., 225 F.Supp. 300.
Following the action of the trustees of the Trust in refusing to take action to provide medical benefits for retired employees, Local 688, International Brotherhood of Teamsters, one of the original parties to the Trust, brought this declaratory judgment pursuant to 28 U.S.C.A. § 2201, seeking a determination as to the legality of the trust agreement. Since the Trust was purportedly established under the provisions of 29 U.S.C.A. § 186, this court has jurisdiction.
The primary issue with which this court is concerned is whether or not this *419 Trust can be sustained on any theory consistent with the provisions of 29 U.S. C.A. 186. (hereinafter referred to as the Act). A detailed discussion of the facts of this case would serve little purpose in this opinion since the matter is before the court on an agreed stipulation of facts. For the purposes of this opinion the stipulation of facts will be adopted as a part of the opinion, made a part hereof, and treated as if fully set out herein.
The Act provides for the establishment of trusts by employers and employees under certain conditions for medical care, pensions and annuities, and other benefits with which we are not here concerned. The Kroger Company, supra, discusses trusts provided for in the Act in considerable detail, but only a medical care trust was involved in that case.
The parties who created the Trust with which we are concerned in this case, tentatively at least, recognized that it was a medical care trust in the name which they gave it, but regardless of the name given the Trust the court must look at the entire Act to determine under what category it falls. If it can fall under the category of a pension and annuity trust  a trust which the statute provides must be separate and apart from a medical care trust  it would be a valid trust, since pension and annuity trusts are set up for the purpose of providing certain benefits to persons who, generally speaking, are retired employees. Subsection (c) (5) (C) of the Act provides for such separate trusts for pension and annuity purposes, but the plaintiff's attorneys admitted that they have not been able to find any case holding that a pension trust can provide medical care, nor any definition of pension which might include medical purposes.
An examination of the legislative history of the Act does not help in this situation. The Ninth Circuit Court of Appeals in Ulmann v. Sunset-McKee Company, 221 F.2d 128, adopts this definition of "pension" as defined in Webster's dictionary: "[A] stated allowance or stipend * * * to one retired from service." The court in the Ulmann case also notes that Funk & Wagnall's New (1940) Standard Dictionary defines "pension" as follows: "A periodical allowance to an individual, or to those who represent him, on account of past services or some meritorious work done by him * * *." It would serve little purpose to specifically refer to the definitions set out in American Jurisprudence, Words & Phrases, Corpus Juris, and other legal publications, since there is little, if any, difference in the meaning of the words "pension" and "annuities" as each of these publications define the words, than that adopted by the court in Ulmann, supra.
The attorneys for the plaintiff concede that trusts which are pension and annuity trusts refer to fixed or stated allowances paid at regular periodic intervals, and thus would not include something as indefinite as medical care, which may or may not be required by the retiree, and which is totally variable in amount and regularity. One must realize that while we are interpreting a part of the Act pertaining to the establishment of trusts under certain conditions, yet we must not lose sight of the fact that this is a part of a criminal statute. While common sense must be used to determine what Congress obviously meant, yet criminal statutes are generally speaking construed strictly. In view of the language used in the statute, the court is of the opinion that the Trust before this court for interpretation does not fall in the category of a pension or annuity trust.
We must next determine if the Trust falls under the provisions of the Act which pertain to medical care. This court dealt with this particular problem in one phase of the opinion in Kroger, supra, and had this to say, l. c. 307 of 225 F.Supp.:
"The plaintiffs contend that it is illegal under subsection (c) (5) of the Act to provide the benefits of the 88 Welfare Trust to retired persons, *420 since they have lost their `employee' status. The defendants contend that the Act permits certain benefits to be set up for retired persons. An examination of the Act discloses defendants' contention to be true, in that it provides in substance that trusts may be established for the payment of pensions on retirement or death of employees, but the Act (29 USCA § 186(c) (5) (C) further provides that payments made for the purpose of providing pensions on annuities must be made to a separate trust, which is separate from a welfare trust, and in this instance (88 Welfare Trust) we are dealing with a welfare trust. In other words, the Act specifically provides for the establishment of two types of trusts, one for the benefit of employees, the other for the benefit of retired employees. Congress did not intend welfare trusts to include pensions or annuities as benefits of such trusts. As stated in the Arroyo case, supra [359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915], Congress established specific standards with respect to welfare trusts. As stated in the Act, a welfare trust is established `for the sole and exclusive benefit of the employees (emphasis added) of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments and their families and dependents): * * *.'
"Retired personnel are not employees of the contributing employers and cannot legally be included as beneficiaries under the 88 Welfare Trust."
The Supreme Court in Arroyo v. United States, 359 U.S. 419, at page 426, 79 S.Ct. 864 at page 868, 3 L.Ed.2d 915, dealt with a problem concerning the Act and said: "* * * specific standards were established to assure that welfare funds would be established only for purposes which Congress considered."
The benefits in the Trust before the court are for the benefit of retired persons, and at the time the benefits, if any, are to be paid to such persons, they are not employees. In the court's opinion the Trust before the court does not meet the requirements of the Act because payments from the Trust are made to retired persons who are no longer employees of contributing employers.
A second question is presented with respect to the Trust which concerns the including of union employees as beneficiaries under the Trust. A similar problem was dealt with at length in Kroger, supra, and in that opinion this court stated, l. c. 309-10 of 225 F.Supp.:
"Although it is well established that a union can be an employer, the court holds that a union cannot be an employer under the terms of 29 USCA § 186(c) (5) as applied to the 88 Welfare Trust. To hold otherwise would be to defeat the primary purpose of 29 USCA § 186. One of the primary purposes of the Act was to alleviate the substantial danger that welfare funds might be employed to perpetuate control of union officers. Arroyo v. United States, supra. To allow Local 88 to be an employer under the 88 Welfare Trust would be to give union leaders an opportunity to funnel welfare benefits to union employees at the union leaders' discretion."
In the establishment of the Trust before the court the draftsmen may have taken into consideration what the court had to say in the Kroger case, supra, thereupon providing that "no union which contributes as an employer for the benefit of its employees shall participate in or have any voice in the selection of any Employers' Trustee" (Page 7, Article 5 of the Trust Agreement). One of the court's reasons for holding in the Kroger case that union *421 employees could not be covered by a trust with the employees of other employers could mean that the trustees of both the employer and employee could be union officers, and the court held that Congress specifically prohibited such. I do not believe that the union employee can be brought under the Trust simply by providing in the agreement that the union employee's employer cannot participate in the selection of the employer trustees. The statute provides that they have that right if they are employers, and the court is of the opinion that it cannot be circumvented by agreement. The statute gives persons and employers who are parties to a trust the right to participate in the selection of trustees, and when the union employees are covered the union has the right by statute to participate as an employer if it can be an employer under the Act. Congress, in the court's opinion, did prohibit the union from participating in the selection of employer trustees, and even if the Trust is a proper one, which the court does not so hold, that part of the Trust covering the union employees falls without the scope of the Act and is not legal.
A third question is presented with respect to the inclusion of the employees of the Trust. This problem was dealt with in Kroger, supra, and in that opinion the court said, l. c. 308:
"Defendants contend that there is little reason to be concerned about participation in the programs of the trust, as beneficiaries, by employees of the trust. Defendants argue that no bribery, extortion or abuse of power is likely to result because of such participation. Further, defendants contend that such participation is simply part of the compensation of trust employees and nothing in 29 USCA § 186 states or implies that trust funds may not be used for this purpose.
"Possibly, defendants are correct in assuming that no bribery, extortion or abuse of power is likely to result because of such participation. However, it is not the function of this court to make such determination, as was made quite clear by the United States Supreme Court in Arroyo v. United States, 359 U.S. 419 [79 S.Ct. 864, 3 L.Ed.2d 915], (1959). Clearly, if Congress had thought employees of such trustees should be included they could have done so. They did not, however."
The Act provides that the trust funds must be for the sole purpose of employees of contributing employers. This requirement cannot be satisfied with respect to the trust employees by the Trust itself making a bookkeeping transfer to cover the trust employees. The employers of employees covered participate in the selection of the employer trustees and to include the trust employees in the benefits of the trust would grant to the trustees of the Trust the right as employers to participate in their own selection. What has previously been said with respect to unions participating in the selection of employer trustees is equally applicable here. The court accordingly holds the Trust cannot be an employer under the terms of the Act.
The court accordingly finds that the Trust does not meet the requirements set forth in the Act and is, therefore, illegal.
This memorandum opinion, together with the stipulation of facts, will be adopted by the court as its findings of fact and conclusions of law and the attorneys for the parties will prepare the proper judgment to be entered by the court.